IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE V. KELLY,** | ) | **Case No. 3:18-cv-126** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PEERSTAR LLC AND LARRY J.** | ) | |
| **NULTON,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

## I.      Introduction

Pending before the Court is Plaintiff George V. Kelly's ("Kelly") Motion for Certification of Final Judgment Pursuant to Rule 54(b). (ECF No. 131.) The motion has been fully briefed (*see* ECF Nos. 132, 134) and is ripe for disposition. For the reasons stated below, the Court will **DENY** Kelly's motion.

## II.      Background

### A.      Procedural Background

On August 15, 2018, Kelly filed an Amended Complaint against Defendants Peerstar LLC ("Peerstar") and Dr. Larry J. Nulton ("Dr. Nulton), alleging that they had breached a 2016 settlement agreement (the "Settlement Agreement") between the parties. (ECF No. 15.) Peerstar and Dr. Nulton answered on September 14, 2018, and asserted counterclaims for: (1) identity theft (Count I); (2) misappropriation (Count II); (3) unauthorized use of name or likeness in violation of 42 PA. CONS. STAT. § 8316 (Count III);

(4) fraudulent inducement of an operating agreement (Count IV); (5) fraudulent inducement of an amendment to the operating agreement (Count V); (6) fraudulent inducement of the Settlement Agreement (Count VI); (7) breach of fiduciary duty (Count VII); and (8) declaratory judgment (Count VIII). (ECF No. 16.) On September 20, 2018, Charles J. Kennedy ("Dr. Kennedy") filed a Complaint against Kelly, asserting claims for: (1) identity theft (Count I); (2) misappropriation (Count II); and (3) unauthorized use of name or likeness (Count 3); the Court consolidated these claims into this case on November 28, 2018. (ECF No. 37.)

On November 22, 2019, Peerstar, Dr. Nulton, and Dr. Kennedy moved for summary judgment. (ECF No. 78.) Kelly also moved for summary judgment that same day. (ECF No. 80.)

On August 26, 2020, this Court granted Kelly's motion in part and denied Peerstar, Dr. Nulton, and Dr. Kennedy's motion. (*See* ECF No. 102.) In short, this Court held that Kelly was entitled to summary judgment on his claim for breach of the Settlement Agreement, and he was also entitled to summary judgment on Counts II-VIII of Peerstar and Dr. Nulton's Counterclaims, as well as Counts II and III of Dr. Kennedy's Complaint. (*See id.*) Therefore, as a result of this Court's decision, the only remaining claims for this Court to resolve are Peerstar and Dr. Nulton's counterclaim for identity theft, as well as Dr. Kennedy's claim for identity theft. (*See id.*)

Kelly now asks this Court to enter a final judgment on his claim for breach of the Settlement Agreement. (ECF No. 131.)

**B.      Kelly's Claim for Breach of the Settlement Agreement** [1]

After Dr. Nulton formed Peerstar, LLC in 2009, Dr. Nulton decided that Peerstar should retain someone to handle the company's operations full time. (ECF No. 102 at 6.) Peerstar therefore hired Kelly as its COO in exchange for a 25 percent ownership stake in the company. (*Id.*) In 2016, Dr. Nulton filed suit against Kelly, seeking a declaratory judgment to force the sale of Kelly's membership interest in Peerstar. (*Id.* at 7.) The litigation ended with the parties signing the Settlement Agreement in 2016. (*Id.*) In the Settlement Agreement, Kelly and Dr. Nulton and Peerstar agreed to a mutual release, Kelly agreed to resign from Peerstar, and Dr. Nulton agreed to pay Kelly $4.3 million in sixty equal installments over a period of sixty months. (*Id.*) However, with forty-one payments still outstanding, Dr. Nulton stopped making payments to Kelly. (*Id.* at 7–8.)

In its summary judgment opinion, this Court found that Kelly is entitled to the remaining forty-one payments that Dr. Nulton owes him under the Settlement Agreement. (*Id.* at 35.) This Court concluded that "no reasonable jury could find that Kelly has failed to establish all three elements of his breach of contract claim." (*Id.* at 34.)

**C.  Dr. Nulton and Dr. Kennedy's Claims for Identity Theft**

Because Dr. Nulton and Dr. Kennedy's claims for identity theft are the only remaining claims in this case, they play a role in this Court's decision on Kelly's Motion for Certification of Final Judgment. *See infra.* Section IV. Therefore, the Court will provide a brief overview of Dr. Nulton and Dr. Kennedy's claims.

---

[1] The Court derives the facts in this subsection and the following subsection from the Court's Memorandum Order on the parties' motions for summary judgment. (*See* ECF No. 102.)

Dr. Nulton and Dr. Kennedy both worked as consultants for Children's Behavioral Health ("CBH") and The ReDCo Group ("ReDCo"). (*Id.* at 2–3.) CBH provided behavioral health rehabilitation services ("BHRS") for children, including children with autism, and ReDCo also provided mental health services. (*Id.*) After Pennsylvania passed the Autism Insurance Act ("Act 62") in 2009, CBH and ReDCo became eligible to bill private insurers for their services. (*Id.* at 4.) CBH and ReDCo contracted with Highmark to bill Highmark for the BHRS services that CBH and ReDCo provided. (*Id.*)

When submitting claims for patient treatment to Highmark, CBH and ReDCo had to provide the individual National Provider Identifier ("NPI") number of the person that provided care to the patient. (*Id.*) As licensed psychologists, Dr. Nulton and Dr. Kennedy each had a unique 10-digit NPI number. (*Id.* at 4–5.) Therefore, in 2009, Kelly instructed Michelle Hershberger, a CBH employee, to complete the appropriate Highmark Request for Assignment Account form, as well as the other forms that were necessary to affiliate Dr. Nulton and Dr. Kennedy with CBH for reimbursement from Highmark. (*Id.* at 5.) Although Kelly sent Hershberger the completed Assignment Account Request form for CBH with what purported to be the signatures of Dr. Nulton and Dr. Kennedy, Dr. Nulton and Dr. Kennedy assert that they never saw the Assignment Account Request form, did not sign it, and did not authorize anyone to sign it for them. (*Id.*)

In like fashion, Kelly sent ReDCo a form containing Dr. Nulton's identifying information and bearing what purported to be Dr. Nulton's signature. (*Id.* at 6.) However, Dr. Nulton asserts that he was never consulted about this form, and he further asserts that he did not give permission for his identifying information to be used on it. (*Id.*) Between

July 2009 and November 2017, CBH and ReDCo submitted thousands of insurance claims

to Highmark with Dr. Nulton and Dr. Kennedy listed as the rendering provider. (*Id.*)

In its summary judgment opinion, this Court held that these facts could lead a

reasonable jury to conclude that Kelly committed identity theft against Dr. Nulton and Dr.

Kennedy. (*Id.* at 13.)

### III.     Legal Standard

Rule 54 of the Federal Rules of Civil Procedure provides that:

> When more than one claim for relief is presented in an action, whether as a claim,
> counterclaim, cross-claim, or third-party claim, or when multiple parties are
> involved, the court may direct the entry of a final judgment as to one or more but
> fewer than all of the claims or parties only upon an express determination that there
> is no just reason for delay and upon an express direction for the entry of final
> judgment.

Fed. R. Civ. P. 54.[2]

"A decision to certify a final decision under Rule 54(b) involves two separate

findings: (1) there has been a final judgment on the merits, i.e., an ultimate disposition on a

cognizable claim for relief; and (2) there is 'no just reason for delay.'" *Berckeley Inv. Grp.,*

*Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) (quoting *Curtiss–Wright Corp. v. General Elec.*

*Co.*, 446 U.S. 1, 7–8 (1980)).

With respect to the final judgment requirement, finality "'is defined by the

requirements of 28 U.S.C. § 1291, which are generally described as 'ending the litigation on

the merits and leav[ing] nothing for the court to do but execute the judgment.'" *Gerardi v.*

---

[2] Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the
need for making review available at a time that best serves the needs of the parties." *Allis-Chalmers*
*Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 363 (3d Cir. 1975) (quoting *Aetna Insurance Co. v. Newton*,
398 F.2d 729, 734 (3d Cir. 1968)).

*Pelullo*, 16 F.3d 1363, 1369 (3d Cir. 1994) (quoting *Sussex Drug Products v. Kanasco, Ltd.* 920 F.2d 1150, 1153–54 (3d Cir. 1990)). Rule 54 "'does not alter this definition, but allows a judgment to be entered if it has the requisite degree of finality as to an individual claim in a multiple claim action.'" *Id.* (quoting *Sussex Drug Products*, 920 F.2d at 1153–54).

This Court's decision that Kelly is entitled to summary judgment on his claim for breach of the Settlement Agreement ends the litigation on the merits with respect to that claim—the Court has nothing further to do, except for executing the judgment. Therefore, Kelly can demonstrate that there has been a final judgment on his breach of contract claim. *See Curtiss—Wright Corp.*, 446 U.S. at 1 (holding that the district court properly entered judgment under Rule 54(b) with respect to the plaintiff's breach of contract claim, even though there were still counterclaims to be adjudicated).

Accordingly, the Court must determine whether there is "no just reason for delay." *See Jankowski v. Lellock*, No. 2:13-CV-194, 2014 WL 5712243, at *6 (W.D. Pa. Nov. 5, 2014).

District Courts in the Third Circuit should analyze five factors when evaluating Rule 54(b) motions:

> (1) the relationship between the adjudicated and unadjudicated claims;
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley*, 455 F.3d at 203 (quoting *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)).

Three principles should guide this inquiry. First, the district court must remember that "the burden is on the party seeking final certification to convince the district court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992). Second, "the district court must balance the competing factors present in the case to determine if it is in the interest of sound judicial administration and policy to certify the judgment as final." *Id*. Finally, "the district court must marshal and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated." *Id*.

**IV.    The Court Will Deny Kelly' Motion to Certify a Final Judgment on His Breach of Contract Claim Because the *Allis-Chalmers* Factors Weigh Against an Entry of Final Judgment**

   **A.  Factor One**

In examining the relationship between adjudicated and unadjudicated claims, this Court has previously considered whether those claims are "clearly separable," with an eye toward the factual underpinnings of the adjudicated and unadjudicated claims. *Simms v. Pennsylvania State University—Altoona*, No. 3:17-cv-201, 2018 WL 1912845, at *2 (W.D. Pa. Apr. 23, 2018); *see also Gerardi*, 16 F.3d at 1372 (stating that a court "should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts underlying the claim resulting in that judgment may be intertwined with the remaining issues.").

On the surface, it is true that Kelly's breach of contract claim and Dr. Nulton and Dr. Kennedy's identity theft claims stem from very different factual situations. Kelly's breach of contract claim involves his actions with one company—Peerstar, while Dr. Nulton and Dr. Kennedy's identity theft claims involve Kelly's actions with totally different companies—CBH, ReDCo, and Highmark. Further, where Kelly is suing over Dr. Nulton and Peerstar's breach of the Settlement Agreement, Dr. Nulton and Dr. Kennedy are suing over Kelly allegedly committing identity theft with respect to their identification numbers.

However, as this Court will explain in Section IV.C below, Dr. Nulton and Dr. Kennedy's identity theft claims are more interrelated with Kelly's breach of contract claim than they first appear. Accordingly, this Court finds that the first factor is neutral.

### B. Factor Two

The Third Circuit has cautioned district courts against certifying issues as final judgments where remaining issues before the district court might provide the moving party with all the relief that it seeks, potentially rendering moot any claims that the moving party has raised on appeal. *Gerardi*, 16 F.3d at 1372.

The resolution of the remaining claims before this Court—Dr. Nulton and Dr. Kennedy's claims for identity theft, will not provide Kelly with any, let alone all, of the relief that he seeks. Moreover, this Court can foresee no other developments that would render the need for review of Kelly's breach of contract claim moot. Accordingly, this Court finds that the second factor weighs in favor of certification of a final judgment.

## C. Factor Three

The Third Circuit has also cautioned district courts against certifying issues as final judgments where there is a "likelihood" that there would be a first appeal and then "a subsequent appeal would again seek review of the issues presented" in the first appeal. *Sussex Drug Products*, 920 F.3d at 1156.

As this Court explained in its summary judgment opinion, Peerstar and Dr. Nulton contend that Kelly's failure to reveal his alleged identity theft to them prior to the parties entering into the Settlement Agreement constituted fraud in the inducement. (ECF No. 102 at 24–25.) Peerstar and Dr. Nulton argue that Kelly's fraudulent conduct renders the Settlement Agreement null and void. (*Id.* at 25.)

This Court held that, even assuming Kelly did fraudulently induce Peerstar and Dr. Nulton into signing the agreement, the Settlement Agreement is a fully integrated agreement and, therefore, evidence of Kelly's alleged fraudulent inducement is barred by the parol evidence rule. (*Id.* at 27–28.) However, if this Court certifies its decision with respect to Kelly's contract claim as final, and if Peerstar and Dr. Nulton should appeal that decision, Peerstar and Dr. Nulton would likely renew their argument that the Settlement Agreement is void due to fraud in the inducement. In that event, if the Third Circuit were to disagree with this Court regarding the application of the parol evidence rule, it would be left to evaluate Peerstar and Dr. Nulton's contentions regarding fraudulent inducement, and thus, identity theft. However, the trial regarding that alleged identity theft would have remained with this Court. This potential that the Third Circuit would have to consider Kelly's alleged identity theft on two separate occasions counsels strongly against granting

Kelly's motion. Indeed, although it is far from certain that this hypothetical situation will come to pass, the possibility that it will occur, coupled with the need to consider "administrative interests" and to attempt to prevent a "waste of judicial resources," leads this Court to conclude that the third factor weighs strongly against certification of final judgment. *Sussex Drug Products*, 920 F.2d at 1156.

### D.  Factor Four

Kelly recognizes that Dr. "Nulton's unadjudicated identity theft counterclaim could technically result in a setoff which would benefit Nulton." (ECF No. 132 at 7.) It is true that, should Dr. Nulton be successful on his remaining counterclaim for identity theft, the amount of money that the Court awards him would reduce the money that Dr. Nulton owes Kelly for breach of the Settlement Agreement.[3] Therefore, this Court finds that factor four also weighs against certification of final judgment.

Although Kelly admits that a judgment in favor of Dr. Nulton would result in a setoff, he directs this Court to *Metro Transportation Company v. Underwriters at Lloyd's of London* for the principle that this fact alone should not preclude entry of final judgment in his favor. No. 88-3325, 1990 WL 96658, at *2 (E.D. Pa. July 3, 1990). However, *Metro Tranportation Company* is distinguishable from the case currently before this Court. There, while there were counterclaims that could have resulted in a setoff, the court also concluded that the "counterclaims are factually and legally distinct from the issues on appeal, so there is no possibility of duplicative effort on the part of the Court of Appeals." *Id.* Conversely,

---

[3] The upcoming trial regarding Dr. Nulton and Dr. Kennedy's identity theft claims is scheduled to be a bench trial. (ECF No. 128.) Therefore, it is this Court that will decide the damages to which Dr. Nulton is entitled, if any.

here, as the Court discussed earlier, if this Court entered final judgment as to Kelly's breach of contract claim, there is a possibility that the Third Circuit would have to duplicate its efforts in the future.

In short, *Metro Transportation Company* simply reinforces the idea that no single factor should control a district court's decision as to whether to certify a judgment as final. In this case, the fact that Dr. Nulton's counterclaim could result in a setoff works together with other factors, like the possibility that the Third Circuit would have to consider the same issue twice, to lead this Court to conclude that it should deny Kelly's motion.

### E. Factor Five

Kelly argues that the miscellaneous factors weigh in his favor because he is entitled to money from Dr. Nulton under the settlement agreement, the trial that is currently scheduled for Dr. Nulton and Dr. Kennedy's identity theft claims will remain unaffected if this Court certifies final judgment in Kelly's favor, and the identity theft claims are without merit. (ECF No. 132 at 7.)

While this Court has found that Kelly is entitled to money from Dr. Nulton under the Settlement Agreement (*see* ECF No. 102), Kelly has not alleged that Dr. Nulton is insolvent or will become insolvent at any time in the near future. *See Curtiss--Wright Corp.*, 446 U.S. at 12 (noting that if the party that owed money on the claim to be certified had been in a precarious financial situation, that fact would have weighed in favor of certifying the judgment as final). Moreover, trial on Dr. Nulton and Dr. Kennedy's identity theft claims

is scheduled for less than a month from now.[4] Therefore, assuming that Kelly emerges from trial with Dr. Nulton still owing him the same amount of money that he does now, Kelly is very close to being in a position to obtain that money, even if this Court does not certify its judgment with respect to his breach of contract claim as final.

With regard to Kelly's second contention, while Dr. Nulton and Dr. Kennedy's identity theft claims would be unaffected if this Court certified final judgment in Kelly's favor, doing so would also create the possibility that an appellate court would have to consider their identity theft claims twice, as explained above.

Finally, with regard to Kelly's contention that Dr. Nulton and Dr. Kennedy's identity theft claims are without merit, Kelly does not expound upon *why* this is the case. (ECF No. 132 at 7.) Further, this Court has expressly found that a reasonable jury could find in favor of Dr. Nulton and Dr. Kennedy with respect to their identity theft claims. (ECF No. 102 at 13.)

Therefore, the miscellaneous reasons that Kelly offers as to why this Court should grant his motion do not provide significant support for his position. Further, Peerstar, Dr. Nulton, and Dr. Kennedy offer economic reasons of their own as to why this Court should deny Kelly's motion, such as the fact that two appeals to the Third Circuit would increase the time and expense that the parties would have to spend on this case. (ECF No. 134 at 6.) Accordingly, this Court finds that the fifth factor is neutral.

---

[4] Trial in this case is scheduled to begin on September 27, 2021. (ECF No. 128.)

V.      **Conclusion**

After considering the relevant factors and balancing the competing interests, and bearing in mind that it is only the "'infrequent harsh case'" that should lead a district court to certify a judgment as final, *Anthuis*, 971 F.2d at 1003, this Court finds that Kelly has failed to satisfy his heavy burden under Rule 54(b). Accordingly, the Court **DENIES** Kelly's Motion for Certification of Final Judgment Pursuant to Rule 54(b). (ECF No. 131.)

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE V. KELLY, | ) | Case No. 3:18-cv-126 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| PEERSTAR LLC AND LARRY J. NULTON, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

NOW, this _____8th_____ day of September, 2021, upon consideration of Kelly's Motion for Certification of Final Judgment Pursuant to Rule 54(b), (ECF No. 131), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said motion is **DENIED.**

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE